## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

CHRIS ANN JAYE,

          Plaintiff,

vs.

WILLIAM BARR, et al.,

          Defendants.

No. C19-0121-LTS

**MEMORANDUM
OPINION AND ORDER**

This matter is before me on an order to show cause (Doc. 52) issued by United States District Judge C.J. Williams (Doc. 52).[1]  On May 12, 2020, plaintiff Chris Jaye sent the court a filing that was docketed as pro se correspondence.  Doc. 46.  Because Judge Williams perceived that filing to be a potential violation of Federal Rule of Civil Procedure 11(b), he directed Jaye to show cause why she should not be sanctioned.  Doc. 52.  Jaye his since filed a show cause response (Doc. 91).  Numerous other motions remain pending.

## I.    *BACKGROUND AND PENDING MOTIONS*

On November 4, 2019, Jaye filed a pro se 42 U.S.C. § 1983 complaint and paid the filing fee.  In that complaint, Jaye alleged that various state and federal actors, mostly judges or members of the legal professional, had violated her constitutional rights in a

---

[1] Judge Williams was originally assigned to this case.  However, plaintiff recently filed two separate lawsuits naming Judge Williams as a defendant.  *See Jaye v. Grewal et al.*, C21-0048-JCB-JDL (E.D. Texas 2021), *Jaye v. Barr et al.*, C20-0321-WTM-CLR (S.D. Georgia 2020).  Judge Williams has therefore recused himself from this case and it has been reassigned to me.  Doc.191.

variety of cases over the course of the last decade. Doc. 1. On December 2, 2019, she filed a motion for an emergency stay. Doc. 4. On December 6, 2019, Judge Williams denied plaintiff's motion for an emergency stay, stating, in part:

> The crux of [Jaye's] claim is that she disagrees with a series of decisions issued from the New Jersey state courts, U.S. District Court for the District of New Jersey, the Third Circuit Court of Appeals, and the U.S. Supreme Court, and believes that various actors in those cases violated her civil rights. That claim is almost certainly frivolous, as it would be barred by various doctrines that prohibit federal courts from reviewing state court cases…

Doc. 5 at 1.[2] In support, Judge Williams cited the *Rooker-Feldman* doctrine,[3] the *Colorado River* doctrine[4] and *Younger v. Harris,* 401 U.S. 37 (1971).[5] Judge Williams also noted that:

> many of the defendants are judicial officers who are immune from suit and many of the claims are conclusory and would fail to state a claim pursuant

---

[2] *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.* explains Jaye's original lawsuit, which involved a condominium association. No. CV158324MASDEA, 2016 WL 7013468, at *2 (D.N.J. Nov. 30, 2016). However, Jaye also has grievances related to her father's estate (Doc. 4 at 35-36) and about a foreclosure sale. *Wilmington Sav. Fund Soc'y, FSB v. Jaye*, No. A-4262-16T4, 2019 WL 2225297, at *1 (N.J. Super. Ct. App. Div. May 23, 2019)

[3] *Rooker-Feldman* is a jurisdictional doctrine based on the Supreme Court's decisions in *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

[4] The Colorado River doctrine permits federal courts to decline to exercise jurisdiction over cases where "parallel" state court litigation is pending, meaning that there is "a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013). This rule is based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

[5] *Younger* instructs federal courts to abstain when certain parallel, "exceptional" state court proceedings exist, such as "state criminal proceedings, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state court's ability to perform their judicial function." *Sprint Comm., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (quotations omitted).

2

to Federal Rule of Civil Procedure 12(b)(6). [6]   Also, there is a complicated question of to what extent plaintiff's claims are barred by res judicata.  *See e.g. Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, 751 F. App'x 293, 296 (3d Cir. 2018), *cert. denied*, 140 S. Ct. 46 (2019), *reh'g denied sub nom. Jaye v. Oak Knoll Vill. Condo.*, No. 18-1374, 2019 WL 6257529 (U.S. Nov. 25, 2019); *Jaye v. United States*, 781 F. App'x 994, 995 (Fed. Cir. 2019).  Finally, there is no reason to believe the Northern District of Iowa is the proper venue for this case.

Doc. 5 at 2. However, Judge Williams then explained that federal courts in the Eighth Circuit may not conduct an "initial review" of, or otherwise *sua sponte* dismiss, a filing-fee-paid complaint by a non-prisoner plaintiff – even if it is clearly frivolous or fails to state a claim for which relief can be granted.  *See Hake v. Clarke*, 91 F.3d 1129, 1132 (8th Cir. 1996) ("We find no support for the district court to have conducted a frivolousness review of non-IFP pro se complaints, or to have conducted an initial review of all pro se complaints under Rule 12(b)(6) before service of process and responsive pleadings."); *see also Phelps v. Lynch*, 613 F. App'x 552, 553 (8th Cir. 2015) (unpublished), stating:

---

[6] Neither Jaye's complaint (Doc. 1) nor amended complaint (Doc. 23) set out her claims in a linear manner.  Nor are they specific about which of the multitude of defendants committed which alleged violation.  Instead, the complaints are just a long list of nonspecific conclusory allegations.  *See e.g.*, Doc. 23 at 24 stating "Defendants 9-33 failed to adjudicate matters brought to a court by controlling law and facts as required by the equal protection clause;" *see also* Doc. 23 at 12, stating, "[n]ot one judge any case (state or federal, Defendants 9-33, 37-43, 45, 47-54) ensured the lawyers (Defendants 6-69) were ... legally authorized by their "client" (Plaintiff or Defendant) to act for them..."  Obviously, this violates Fed. R. Civ. P. 8(a)(2).  Additionally, many of Jaye's claims would be barred by the statute of limitations.  42 U.S.C. § 1983 claims are governed by the relevant state's personal injury statute of limitations.  *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985).  In Iowa, § 1983 actions are subject to a two-year statute-of-limitations.  *See* Iowa Code § 614.1(2).  The same is true in New Jersey.  *See Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  Jaye filed this case on November 4, 2019.  Accordingly, claims that arose before November 4, 2017 would be time barred.  *See e.g.*, Doc. 23 at 31, ¶¶ 136-137, noting that the culmination of some of the defendants alleged constitutional violations occurred in 2016 and 2017.

3

Phelps was not a prisoner, as required for 28 U.S.C. § 1915A to apply, *see Kolocotronis v. Morgan*, 247 F.3d 726, 728 (8th Cir. 2001), and he had not sought leave to proceed in forma pauperis, as required for 28 U.S.C. § 1915(e)(2)(B) to apply. In addition, the claims were not subject to dismissal for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1331. We further conclude that dismissal under Rule 41(b) was unwarranted, because the district court lacked authority to conduct the underlying preservice screening.

Accordingly, Judge Williams allowed the case to proceed.

On January 10, 2020, Jaye filed a motion to issue summons, along with a motion to amend her complaint. Docs. 12, 13. Judge Williams granted her motion to issue summons, noting that Clerk's office failed to provide a summons when Jaye filed her complaint. Doc. 14. On February 26, 2020, Judge Williams granted Jaye's motion to extend time to serve the summons and complaint pursuant to Fed. R. Civ. P. 4(m). Doc. 20. Jaye filed an amended complaint on March 18, 2020. Doc. 23. On April 16, 2020, Judge Williams granted Jaye additional time to serve the defendants. Doc. 27.

On April 21, 2020, attorney Charles Nelson entered an appearance for defendants Barry Albin, Faustino Fernandez-Vina, Gubir Grewal, Jaynee Lavecchia, Anne Patterson, Stuart Rabner, Michelle Smith, Lee Solomon, Walter Timpone and Lyndsay Ruotolo. Docs. 28, 39. On May 14, 2020, those defendants (hereinafter the state defendants) filed a motion to dismiss.[7] Docs. 47-49. On May 28, 2020, Jaye filed a

---

[7] The state defendants:

> acknowledge a number of additional named defendants in or near the State of New Jersey who have not appeared in this case and on whose behalf the undersigned counsel has not yet noted an appearance. . . Although the undersigned counsel does not now represent those defendants, the State Defendants request the Court's disposition of this motion include the interests of such similarly situated defendants in the interest of judicial economy and substantial justice.

Doc. 48 at 1.

4

pro se resistance (Doc. 55) to the motion to dismiss, and the state defendants filed a reply (Doc. 69). The motion to dismiss remains pending.

On June 4, 2020, defendants Karen Cassidy, Yolanda Ciccone, Kathleen Dupuis, Margaret Goodzeit joined the state defendants' motion to dismiss (Doc. 47). Doc. 68. Doc. 71. On August 18, 2020, defendant James Kassis entered an appearance on his own behalf and joined the state defendants' motion to dismiss. Doc. 98. On August 19, 2020, Mr. Nelson entered an appearance on behalf of various New Jersey state court judges (Williams Anklowitz, Paul Innes, Douglas Hurd, Michael Oester, William Nugent and Ellen Koblitz). Doc. 95. Those defendants joined the state defendants' motion to dismiss. Doc. 96.

On August 20, 2020, several additional defendants (Jessica Baker, Catherine Brennan, Jonathan Katz and Kenneth Sauter) entered appearances on their own behalf. Docs. 102-105. Those defendants also joined the state defendants' motion to dismiss. *Id*. On September 28, 2020, attorney William Reasoner entered an appearance on behalf of Rodger Levenson, who joined the state defendants' motion to dismiss. Docs. 134, 135. On October 9, 2020, Mr. Nelson entered an appearance on behalf of defendant Mark Ciarrocca, who filed a motion to join the state defendants' motion to dismiss. Docs. 138, 139. That motion remains pending. On December 8, 2020, defendant Steven Rowland entered an appearance on his own behalf and joined the state defendants' motion to dismiss. Doc. 154.

At various times, Jaye filed resistances to the joinders. Docs. 71, 108, 109, 143. On September 14, 2020, the state defendants filed a reply to the resistances. Doc. 117. Meanwhile, on May 26, 2020, Jaye filed an interlocutory appeal and a motion for default. Docs. 53, 54. On June 2, 2020, Jaye filed another motion for an injunction and a motion for a stay pending the appeal. Docs. 60, 61. On June 5, 2020, Jaye filed a motion to strike Mr. Nelson's appearance. Doc. 72. On June 8, 2020, Judge Williams denied the motion to stay, finding that Jaye's appeal was improperly brought. Doc. 73. Judge

Williams also denied Jaye's motion for default judgment, Jaye's motion for an injunction and motion to strike Mr. Nelson's appearance. Docs. 73, 74. The Eighth Circuit Court of Appeals subsequently denied Jaye's appeal. Doc. 86.[8]

On June 16, 2020, Assistant United States Attorney Jacob Schunk entered an appearance on behalf of the federal defendants. Doc. 77. The federal defendants subsequently filed a motion to dismiss all claims against federal officers and entities sued in their official capacity. Doc. 78. Jaye filed a resistance to that motion on June 30, 2020. Doc. 83. That motion to dismiss remains pending. On July 10, 2020, the federal defendants filed a motion to stay their response deadline. Doc. 88. Judge Williams granted that motion. Doc. 92.

On August 28, 2020, attorney Timothy O'Connor entered an appearance on defendants Fredrick Brown, Ian Doris, and Mary Melfi (hereinafter the Hunterdon County defendants). Doc. 106. The Hunterdon County defendants also filed a motion to dismiss. Doc. 107.

On June 30, 2020, Jaye filed a motion to extend the time to serve various defendants. Doc. 84. The federal defendants filed a resistance to that motion (Doc. 88) and it remains pending. On September 1, 2020, Jaye filed a motion to substitute a party, which remains pending. Doc. 111. Starting in September 2020, Jaye began filing a second set of motions ostensibly to enjoin other courts from acting, all of which remain pending. *See* Docs. 121, 124, 126, 127, 128, 129, 133, 148, 151, 168. The federal defendants, along with Levenson, have resisted those motions. Docs. 136, 155, 159. Levenson also filed a resistance. Other defendants filed a motion to stay those issues pending a ruling on the motion to dismiss. Doc. 145. That motion remains pending.

---

[8] Jaye also filed a writ of mandamus, which the court of appeals denied on December 18, 2020. Doc. 161. Since then, Jaye filed other uncategorized motions that the court of appeals has denied. *See* Docs. 173, 175. Most recently, Jaye filed a petition for a writ of certiorari with the United States Supreme Court which remains pending. Doc. 188.

On September 24, 2020, Jaye filed a motion for sanctions against the state defendants, which remains pending. Doc. 132. On October 9, 2020, the state defendants filed a resistance to the motion for sanctions. Doc. 141. On December 8, 2020, Jaye filed two motions to strike documents. Docs. 156, 157. On that same date Jaye filed a second motion for sanctions. Doc. 158.

Finally, after Jaye responded to Judge Williams' order to show cause (Doc. 91), she continued to send the court uncategorized filings, which the Clerk's office has alternately file as notices or correspondence. *See* Docs. 100, 101, 112-116, 118, 120, 142, 146, 147, 149, 152, 153, 162-166, 169-171, 174, 176, 178-182 and 187. These filings include cases or motions Jaye filed in other courts, copies of various rules and letters to Judge Williams.[9]

## II.     *FEDERAL RULE OF CIVIL PROCEDURE 11(b)*

### A.     *Standard*

All parties to federal lawsuits, including pro se parties, must comply with the rules. Federal Rule of Civil Procedure 11(b) states, in pertinent part:

> [b]y presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. . .

Fed. R. Civ. P. (b)(1). Rule 11(c) states:

> [o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b). . .   A sanction imposed under this rule must be limited to what

---

[9] The various uncharacterized filings Jaye filed – after being directed to show cause – encompass over 530 pages.

suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(3)-(4).

### B.    The Show Cause Order

On May 13, 2020, Jaye sent the court a document, styled as a letter, which was addressed to Judge Williams. The letter was sent via email to the Clerk's office, the typical manner in which Jaye submits filings. *See* Doc. 25. In her email to which the letter was attached, Jaye stated, "[p]lease file and send EFC and stamped copy. Chris Ann Jaye." In her letter, Jaye stated:

> I know not how many Ruby Ridges, Bundy Stand-Offs and WACO showdowns it will take for you to understand that people will not simply let the government dictate the lives, property and the liberty of others via corrupt court rulings and no due process judges who think they are out of reach of the law they break, but like those suffered souls – I am reaching a dangerous point of no return When the government fails to give the people its right to peaceful First Amendment remedies by the law through the usurpation, lies and manipulation of tyrannical, corrupt, unelected judges, I have a right to defend myself. I have a right to defend what is mine. If this cannot be done in a court of law because no court exists and it is not being done by those hired to uphold the law as per theft of my property, it will be done outside of the courts. . . Whatever I may choose to do outside a court of law to protect my rights could have been avoided in a court of law. Lord knows, there are enough records to prove this – which includes endless filings with the US DOJ, US AG and even the US Supreme Court. And to one and all, I say to them "FUCK YOU." I hope the last two words require no cute interpretations from any lawyers.

Doc. 46 (footnote omitted).

Judge Williams observed that Jaye's letter was "threatening, insulting, vulgar, and unrelated to any pending issue" and was seemingly sent for an improper purpose. Doc. 52 at 4. Accordingly, Judge Williams directed Jaye to file a written "show cause" response stating why she had not violated Fed. R. Civ. P. 11(b). Judge Williams stated that if Jaye failed to "file a response, or if that response fails to explain the violation, the Court will impose a sanction." Doc. 52 at 4-5. Finally, Judge Williams noted that, "[s]anctions may include dismissal of this case, monetary penalties, and/or placing plaintiff on a prohibited filer list." Doc. 52 at 4-5.

## C.    *Jaye's Response*

The heading of Jaye's response to the show cause order is "Response to Threat of Sanctions and OTSC: Another Sideshow by a Federal Judge." Doc. 91 at 1. In the response, Jaye accuses Judge Williams of acting unprofessionally:

> this is the job you have been hired to do and have failed entirely in doing. You have illegally denied me the rights to remedies Congress has put into effect to ensure a dismissal to protect other judges. This sideshow is but one more move by you being used to obfuscate the case and controversy at hand and push me out of the court to save your buddies (lawyers, judges and government actors) from liability.

*Id*. She goes on to say:

> You want to set [the defendants] free from this case and you have been hellbent on doing so from the start. At the end of the day, you have rigged this case for their benefit which has now taken shape in the form of this ruse of an R. 11 directive

*Id*., at 2. Jaye further argues that Judge Williams is conspiring against her by "[taking over] the case from the magistrate" and denying her motions for injunctive relief. Additionally, she states that Judge Williams conspired against her by not dismissing the various motions to dismiss and is seeking to prevent the governments at issue from having

9

to pay the cost of representing the defendants.  Jaye then expressly states that she does not wish to reply to the substance of the show cause order:

> Is this what you now expect of me?  By this order?  Do you expect me to justify my beliefs with tears and pleas of mercy to you (a government actor)?  Do you expect me to prove something to you to disprove what you feel?  What level of insanity have we reached?  In order for my constitutional rights to not be deprived by you or my money taken, I have to disprove your feelings as to my beliefs that you do not like?  Is this the United States?  Or is this the USSR?  Cuba?  North Korea?  And who the hell do you think you are?  You must be out of your mind.  Truth be told, I have to do nothing of the sort.  I owe you no explanation or justification of my feelings.  In fact, it is MY DUTY to petition despots such as those in the Judicial Branch… whether you like it or not.  And it is MY RIGHT BY LAW to hold government actors to account.  Whether you agree or not, I have every right to say as much without fear of government retaliation and harassment which this OTSC is.

Doc. 91 at 4.  Jaye also argues that because her original filing was threatening, the court has no power to sanction her because Rule 11(b) does not explicitly contemplate or prohibit threats:

> R. 11 does not allow sanctions for threats and you are not at liberty to play prosecutor from the bench by transforming R. 11 into a perverse arraignment of some kind.

*Id.*, at 5.

The remainder of Jaye's response is dedicated to her interpretation of the role of the court, and her belief that various current events support her view that the court system is corrupt.

## D. Analysis

Jaye's original correspondence (Doc. 46) was inappropriate and threatening.[10] When given the opportunity to show cause why she should not be sanctioned, she doubled downed. Her response shows that she does not view this case as an opportunity to resolve a legitimate dispute or to vindicate her rights. Instead, Jaye has elected to use this case as a forum to voice her protests against imagined corruption in the state and federal judicial systems while insulting everyone entangled in her myriad proceedings. Having carefully reviewed this matter, I find that both Jaye's original filing (Doc. 46) and her show cause response (Doc. 91) violate every portion of Fed. R. Civ. P. 11(b), as they are intended to harass and delay, they are frivolous, and her assertions are not supported in any legally cognizable way. Thus, I must consider the appropriate sanction.

Rule 11 states, in relevant part:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4). As such, and among other considerations, the sanction must serve to deter Jaye from committing further violations of this type. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (concluding that the primary purpose of

---

[10] It is important to note that this was not an aberration. Jaye had previously filed several documents that appeared to serve no purpose other than to harass or waste the court's resources. *See e.g.,* Doc. 44 (a document docketed as correspondence in which Jaye referred to a judge getting to "rape the people of Woodbridge;" and Doc. 7, which was docketed as a motion to reconsider, but was in substance an opportunity for Jaye to list her grievances against the judiciary, including stating that, "if acting against the filth that call themselves judges in New Jersey is unpalatable to you, then you should not have sought the position of being a federal judge. A federal court is where a citizen goes to obtain relief against the disgusting excuses for judges we have in the State of New Jersey. I would think you would know this."

11

Rule 11 sanctions is to "deter baseless filings in district court and thus … streamline the administration and procedure of the federal courts."); *Kirk Capital Corp v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994) ("the primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending."). This is a difficult task, as the docket contains nearly two hundred entries and a long list of meritless abusive filings.[11] A sanction that allows Jaye to continue to burden the court with abusive filings would undermine the purpose of the rule.

The facts of Jaye's first case (or cases) are not particularly relevant at this stage of her litigation history. What is relevant is the progression of her cases. Jaye had typical state court issues: a property rights question, a homeowner's association dispute, a probate case and a foreclosure. She brought her cases to the state courts of New Jersey but did not prevail. *See Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, 2016 WL 7013468, at *2 (setting out Jaye's case history).

Based on her filings, Jaye felt that officials involved in her cases had acted extrajudicially. She thus sued them directly in the New Jersey state courts. *See e.g.*, *Jaye v. Ciccone*, No. A-3817-13T2, 2016 WL 731927, at *1 (N.J. Super. Ct. App. Div. Feb. 25, 2016). She did not prevail. She then asserted a similar claim in the New Jersey federal court. She did not prevail. *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n*, 2016 WL 7013468. She appealed and the Third Circuit Court of Appeals affirmed. *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, 751 F. App'x at 300. Jaye sought a writ of

---

[11] Of course, pro se filings must be given deferential consideration. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). But this is not a case where Jaye is being held to a standard beyond her pro se skill set. Rather, her filings show she is capable of writing cogently (albeit abusively) and following her case's docket. The issue is her willful choice to assert frivolous claims and making harassing comments in her filings.

12

certiorari, which was denied. *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, 140 S. Ct. 2741 (2020).

At that point, Jaye had exhausted her potential remedies.[12] Nonetheless, she then took her claims to the Court of Federal Claims, where her case was denied both by the district court and by the Federal Circuit Court. *Jaye*, 781 F. App'x at 995 (denying Jaye's request to review the decisions of the New Jersey state and federal courts for lack of jurisdiction). Jaye then filed essentially the same case in this district. Recently, she filed similar cases in the Eastern District of Texas and the Southern District of Georgia. In none of her recent cases, including this one, has Jaye attempted to explain why federal courts in Iowa, Georgia and Texas should be involved in her New Jersey-based claims, other than to make grandiose claims about a vast judicial conspiracy against her. It is clear that Jaye is simply forum shopping her failed case in different federal courts. This is a fundamentally-inappropriate use, and abuse, of the federal court system,[13] and it is only aggravated by the quantity of abusive filings that Jaye submits.[14]

I find that the appropriate way to deter Jaye from continuing to waste the court's resources, along with the time and resources of the defendants, is to dismiss this case with prejudice. This sanction is supported by precedent. In *Carlone v. Asbestos Workers*

---

[12] This is an accurate, albeit simplified, summary of Jaye's litigation history.

[13] *See Dempsey v. Massachusetts State*, 1992 WL 60438, at *1 (1st Cir. 1992) (unpublished), stating in the context of a § 1983 appeal:

> [F]ederal district courts do not sit as "super appellate courts" reviewing errors allegedly committed by a state court. This is so whether the state-court judgment is final, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983), or whether, and more forcefully, state proceedings remain pending, as is apparently the case here. *See Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986) (and cases cited therein)

[14] As noted above, after Jaye was directed to show cause, she filed more than five hundred pages of additional miscellaneous (and often obnoxious) filings.

*Loc. 34*, No. CIV. 13-783 SRN/JSM, 2014 WL 1652152, at \*9 (D. Minn. Apr. 9, 2014), *report and recommendation adopted*, No. CIV. 13-783 SRN/JSM, 2014 WL 1652153 (D. Minn. Apr. 24, 2014), the court found that a pro se plaintiff violated Rule 11(b) under similar circumstances.  Like Jaye, Carlone filed the same claims repeatedly, in a variety of different forums.   The defendants explained that "[plaintiff's] multi-year campaign against them using agency proceedings, state and federal court legal actions, attorney disciplinary proceedings, and complaints to the FBI, has had only one purpose— to harass them in violation of Rule 11(b)(1)'s prohibition against using the legal process to harass an opposing party." *Id*.  The court stated:

> It is evident to this Court that Carlone has no intention ceasing his meritless legal campaign against the Union and its agents...  Based on Carlone's long history of pursuing frivolous claims and threats to continue this pattern of conduct, the Court finds that Carlone is endeavoring to use the legal process to harass the Union and its agents in violation of Rule 11(b)(1). Consequently, the Court finds that Carlone has violated Rule 11 and that sanctions are in order.

*Carlone v. Asbestos Workers Loc. 34*, 2014 WL 1652152, at \*9.   Thus, the court dismissed the action with prejudice as being "meritless," stating the "[n]othing Carlone has filed with the Court suggests that his claim against defendants has any merit in substance, or that it is not preempted by the NLRA or time-barred." *Id*.  The Eighth Circuit affirmed, stating:

> Upon careful review, we conclude that the district court did not abuse its discretion in imposing Rule 11 sanctions, as Carlone has an extensive history of filing frivolous and vexatious lawsuits and has threatened to continue doing so.  *See* Fed. R. Civ. P. 11(c); *Carman v. Treat*, 7 F.3d 1379, 1381–82 (8th Cir. 1993).

*Carlone v. Asbestos Workers Local 34*, 589 F. App'x 344 (8th Cir. 2015) (unpublished). For the same reasons, dismissal with prejudice is the appropriate sanction in this case.

Dismissal with prejudice is, of course, an extreme sanction.  *See Givens v. A.H. Robins Co.*, 751 F.2d 261, 263 (8th Cir. 1984) (noting, in the context of a discovery

14

sanction, "[d]ismissal with prejudice is an extreme sanction and should be used only in cases of willful disobedience..."). However, extreme conduct warrants an extreme sanction. *See Am. Inmate Paralegal Assoc. v. Cline*, 859 F.2d 59, 62 (8th Cir. 1988):

> The record in the present case, which comprises four voluminous files, includes numerous abusive letters about the magistrate and district court judge, various petitions for writs of mandamus to this court as well as to the Supreme Court, and dozens of affidavits from prisoners incarcerated at MSP alleging that the magistrate conspired with prison officials to retaliate against them for their litigation. Even if there was any merit to appellants' complaint against the prison officials, the voluminous amount of frivolous documents submitted by appellants—all typed—in connection with this litigation supports the dismissal with prejudice as a Rule 11 sanction.

Moreover, even before this case was filed, Jaye had been warned by the Third Circuit about her abusive conduct:

> We also remind Jaye that "[n]o action will be taken on any motion that seeks relief that has already been requested in any of [her] appeals," that "if she continues to submit repetitive and frivolous documents to the Court, the Court will issue an order to show cause why [she] should not be enjoined from filing[,]" and that if "she continues to make disparaging remarks against opposing parties, counsel, or judges or allegations of criminal behavior or other wrongdoing by persons involved in the litigation that are not supported by clear evidence, she will be subject to sanctions, including monetary fines." *See Jaye v. Oak Knoll Vill. Condo. Assoc.*, C.A. No. 18-2187 (order entered August 2, 2018).

*Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, 751 F. App'x at 300.[15]

Jaye has long been on notice that the conduct she has engaged in in this case violates the Federal Rules of Civil Procedure. Yet she continued to file numerous abusive filings, including the correspondence filed at Doc. 46. When Judge Williams gave Jaye

---

[15] *See also* the state defendants' brief in support of their motion to dismiss which includes a table listing instances of other courts sanctioning, or threatening to sanction, Jaye. Doc. 48 at. 11. It lists eight examples.

an opportunity to show cause why she should not be sanctioned, she filed another unsupported, harassing, and abusive screed stating her view of the court system. Doc. 91. Jaye has violated Rule 11. Dismissal with prejudice, while extreme, is the appropriate remedy to deter Jaye's conduct. Indeed, while I have fully considered less-extreme sanctions, I find that none would come remotely close to serving the purposes of Rule 11. As such, and for the reasons set forth herein, this case will be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 11(c).

### III. THE COURT'S INHERANT POWER TO SANCTION

In the alternative, even if a sanction under Rule 11 is not appropriate, I would dismiss Jaye's case with prejudice as an entirely-appropriate exercise of the court's inherent power. The United States District Court for the District of Minnesota recently examined the federal court's inherent power to sanction vexatious litigants.

> "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020) (quoting *Chambers*, 501 U.S. at 44–45). Although "a court ordinarily should rely on the [Federal] Rules rather than [its] inherent power when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, a court may safely rely on its inherent power if in its informed discretion … the Rules are [not] up to the task." *Schlafly*, 970 F.3d at 936 (quoting *Chambers*, 501 U.S. at 50) (internal quotation marks omitted)…
>
> The Court's inherent power extends to the imposition of "sanctions appropriate 'for conduct which abuses the judicial process.'" *Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1993) (quoting *Chambers*, 501 U.S. at 44–45); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) (recognizing "the 'well-acknowledged' inherent power of a court to levy sanctions in response to abusive litigation practices" (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962))). The Court's inherent power

16

to sanction abuses of the judicial process may be invoked sua sponte. *See Willhite v. Collins*, 459 F.3d 866, 870 (8th Cir. 2006) (upholding award of attorneys' fees imposed as sua sponte sanction under the district court's inherent power).

Abusive conduct sanctionable under the Court's inherent power includes extrajudicial communications intended to harass or intimidate opposing parties, their counsel, or the Court. *See, e.g., Frumkin v. Mayo Clinic*, 965 F.2d 620 (8th Cir. 1992) (upholding sanction in response to litigant threatening witnesses); *Myart v. Taylor*, No. SA: 5:16-CV-736-DAE, 2016 WL 5376227 (W.D. Tex. Sept. 26, 2016) (granting preliminary injunction enjoining the plaintiff from harassing contacts with the defendants); *Nguyen v. Biter*, No. 1:11-CV-00809-AWI, 2015 WL 366932 (E.D. Cal. Jan. 27, 2015) (sanctioning pro se litigant for including harassing communications in court filings and messages to opposing counsel); *Blum v. Schlegel*, No. 91-CV-633S, 1996 WL 925921, at *8 (W.D.N.Y. May 9, 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997) (sanctioning litigant for sending letters to third parties disparaging opposing counsel and the presiding judge).

*Fredin v. Middlecamp*, No. 17-CV-03058 (SRN/HB), 2020 WL 6867424, at *5 (D. Minn. Nov. 23, 2020).

If Jaye's conduct in this case did not violate Fed. R. Civ. P. 11(b) because Doc. 46 was not a "pleading" or a "motion" that involved "claims, defenses, and other legal contentions, her conduct would still be sanctionable. She has repeatedly insulted, threatened, and harassed Judge Williams and the opposing parties in her filings. [16] Whether or not the filings cited above constitute the types of pleadings governed by Rule 11, or if they are instead extrajudicial communications, they serve no legitimate purpose

---

[16] *See e.g.*, Doc. 120, which was captioned "Rulings Absent Jurisdiction," where Jaye wrote, "[l]ike all dictators, the results are whatever motivates the so-called jurists. And in this case, your motivation is protecting judges… not my constitutional rights. This is why I said 'fuck the courts' and will continue to stand by that statement. These are not courts. We do not have judges." As an aside, it is perplexingly why someone who harbors such sentiments about the judicial system cannot stop herself from flooding that supposedly-corrupt system with her filings.

and are clearly designed to disparage and harass the court and opposing parties. For the reasons cited above, including Jaye's history, the quantity of her abusive filings, the manner in which she is wasting the court's limited resources and the fact that her claims are meritless, I would employ the court's inherent powers to sanction Jaye by dismissing this case with prejudice.

## IV. MOTIONS TO DISMISS

Because I am dismissing this action with prejudice due to Jaye's abusive and frivolous conduct, the pending motions to dismiss are moot. However, the arguments raised in those motions present several alternative reasons as to why this case must be dismissed. As such, I will address the motions briefly.

### A. Applicable Standards

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

18

face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c). Thus, when the pleadings necessarily embrace certain documents, I

19

may consider those documents without turning a motion to dismiss into a motion for summary judgment. *Id.*

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## B.   *The Defendants' Arguments*

The state defendants[17] argue that this case must be dismissed for want of personal jurisdiction. In their brief in support of their motion to dismiss (Doc. 48) the state defendants set out the correct standards for Iowa's long arm statute, which would be applied in this case. The Eighth Circuit applies five nonexclusive factors, based on

---

[17] By "the state defendants" I mean both those defendants who originally filed the state defendant motion to dismiss (Doc. 47) and those New Jersey-based defendants who have joined, or have asked to join, that motion. Similarly, the phrase "federal defendants" includes all those defendants who have joined the federal defendants' motion to dismiss (Doc. 78), and the "Hunterdon County defendants" includes all defendants who have joined the Hunterdon County defendants' motion to dismiss (Doc. 107).

the totality of the circumstances, in determining whether a defendant has sufficient minimum contacts to confer personal jurisdiction in a given forum: 1) the nature and quality of the contacts with the forum state; 2) the quantity of the contacts; 3) the relationship of the cause of action to the contacts; 4) the interest of [the state] in providing a forum for its residents; and 5) the convenience or inconvenience to the parties. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). Accordingly, Jaye must make a prima facie showing of jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). However, Jaye has failed to allege any contacts between either the state defendants or this cause of action to the state of Iowa. This court lacks personal jurisdiction over the state defendants.

Additionally, the state defendants are correct that venue is not proper in the Northern District of Iowa pursuant to 28 U.S.C. § 1391(b)(1) because the state defendants are from New Jersey, and it is not proper pursuant to § 1391(b)(2) because there is no evidence that any events giving rise to Jaye's claims occurred in the Northern District of Iowa and it is not proper pursuant to § 1391(b)(3) because there are other districts where venue would be proper. Thus, if I was not dismissing this case as a sanction, I would grant the state defendants' motion to dismiss pursuant to 28 U.S.C. § 1406(a), which states, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[18]

Similarly, I would grant the federal defendants' motion to dismiss (Doc. 78). First, claims against federal officials for alleged violations of constitutional rights can be brought only pursuant *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and only then against persons in their individual capacities. Even assuming Jaye has alleged a *Bivens* action, which is not at all clear, all claims against the

---

[18] The interest of justice does not support transfer because Jaye's case is abusive and meritless.

federal defendants in their official capacities would fail. Second, Jaye's amended complaint (Doc. 23) fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Rather, as discussed above, the amended complaint is a long list of conclusory statements that does not describe the specific allegations against individual defendants. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions."). Third, venue is inappropriate in this district. Venue for suits brought against federal officials is governed by 28 U.S.C. § 1391(e)(1), which provides for venue where a defendant resides, a substantial part of the events occurred (or where a substantial part of the property that is subject to the suit is located), or the plaintiff resides. None of these apply to the Northern District of Iowa. Dismissal is appropriate because the interest of justice does not support transfer.

Finally, if I was not already dismissing this case as a sanction, I would grant the Hunterdon County defendants' motion to dismiss (Doc. 107). Those defendants raise three of the arguments dismissed above: 1) that Jaye's case must be dismissed because there is no personal jurisdiction over the Hunterdon County defendants; 2) Jaye's case should be dismissed because venue is not appropriate in this district; and 3) Jaye's conclusory amended complaint (Doc. 23) fails to state a claim and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). All three arguments are sound and would support dismissal of Jaye's claims against those defendants.

## V.     OTHER PENDING MOTIONS

Jaye's motion to extend the time to serve (Doc. 84) and motion to substitute party (Doc. 111) will be denied as moot. Jaye's motions to enjoin various court actions (Docs. 121, 126, 127, 128, 129, 133, 148, 151, 168) will be denied. Jaye's motions for default (Docs. 124, 150) and motions to strike (Docs. 156, 157) will be denied. Jaye's motions

22

for sanctions against the state defendants (Docs. 132, 158) will be denied for the reasons set forth in the state defendants' resistance (Doc. 141).

Defendant Ciarrocca's motion to join (Doc. 139) will be granted. The state defendants' motion to stay (Doc. 145) will be denied as moot.

## VI.    ADMONISION

Jaye has the right to appeal this order to the Eighth Circuit Court of Appeals. I trust that she will do so. However, any subsequent motions she may file in this court that concern this case, such as motions to reconsider, will be summarily denied. If Jaye files any further abusive filings, I will direct her to show cause why a substantial monetary sanction should not be imposed. Finally, Jaye is put on notice that if she files additional cases in this district, and any of those cases are ultimately found to be either frivolous or abusive, she will be barred from filing further pro se cases without prior leave of the court.

## VII.    CONCLUSION

For the reasons set forth herein:

1.    Jaye's claims are **denied** and this case is **dismissed** with prejudice as a sanction pursuant to Fed. R. Civ. P. 11(c). In the alternative, Jaye's claims are **denied** and this case is **dismissed** with prejudice as a sanction pursuant to the court's inherent power.

2.    The state defendants' motion to dismiss (Doc. 47) is **denied** as moot.

3.    The federal defendants' motion to dismiss (Doc. 78) is **denied** as moot.

4.    The Hunterdon County defendants' motion to dismiss (Doc. 107) is **denied** as moot.

5.    Jaye's motion to extend the time to serve (Doc. 84) is **denied** as moot.

6.    Jaye's motion to substitute party (Doc. 111) is **denied** as moot.

7.    Jaye's motions to enjoin various court actions (Docs. 121, 126, 127, 128, 129, 133, 148, 151, 168) are **denied.**

8.    Jaye's motions for default (Docs. 124, 150) are **denied**.

9.    Jaye's motions to strike (Docs. 156, 157) are **denied**.

10.   Jaye's motions for sanctions (Docs. 132, 158) are **denied**.

11.   Defendant Ciarrocca's motion to join (Doc. 139) is **granted**.

12.   The state defendants' motion to stay (Doc. 145) is **denied** as moot.


**IT IS SO ORDERED.**

**DATED** this 25th day of March, 2021.

_____
Leonard T. Strand, Chief Judge